Strafford
No. 6670

### JANE S. NARINS v. DAVID H. NARINS

April 30, 1976

*Normandin, Cheney & O'Neil* and *David O. Huot (Mr. Huot* orally) for the plaintiff.

*Fisher, Parsons, Moran & Temple* and *Daniel M. Newman (Mr. Newman* orally) for the defendant.

KENISON, C.J.  This is a bill in equity to enforce the support provisions of an agreement between the parties which they entered into shortly before their divorce and which was incorporated into the divorce decree granted by a Mexican court. The defendant moved to dismiss the bill on the ground that the agreement violated the public policy of New Hampshire. In the alternative the defendant sought modification of his support obligation. The Trial Court (*Mullavey,* J.) denied the motion to dismiss, found that an arrearage of $3,916.10 existed under the provisions of the agreement and ordered the defendant to pay this sum to the plaintiff. The court further ordered the defendant to furnish copies of his income tax returns to the plaintiff in accordance with the agreement. The court denied the defendant's prayer for modification and reserved and transferred the defendant's exceptions.

The parties were married in New York and lived there until their divorce. They executed the agreement in question on August 13, 1965. They were divorced by the decree of a Mexican court on September 10, 1965. The Mexican court approved the agreement and incorporated it in the decree. The agreement provides that "the rights, privileges, duties and liabilities of the parties hereunder . . . shall be construed in accordance with the laws of the State of New York . . . ." *See* 18 A.L.R.2d 760, 785 (1951). The defendant's brief concedes, "The agreement is indeed valid in the state of New York . . . ." The plaintiff is domiciled in New York, the defendant in New Hampshire.

The agreement provides for the custody of the parties' child, a division of their property, the payment of support by the defendant, and the payment of the plaintiff's counsel fees in connection with the execution of the agreement. It contains covenants by each party not to claim any interest in the property of or to interfere with the other party. The agreement provides that it shall cease to be binding if the parties are still married on January 1, 1966. *See Butler v. Marcus,* 264 N.Y. 519, 191 N.E. 544 (1934).

The sole issue before this court is the defendant's contention that the agreement is contrary to the public policy of New Hampshire and should not be enforced by New Hampshire courts. The defen-

dant argues that the agreement is "a scheme to obtain a divorce by collusion" which holds out "a premium for the untying of the marriage knot." He does not attack any particular provision of the agreement, nor does he rely on any circumstance of its execution to sustain his position. He cites four cases. *Sayles v. Sayles,* 21 N.H. 312 (1850), was an action on a note given in return for a promise not to contest a divorce proceeding where no ground for divorce existed. *Foote v. Nickerson,* 70 N.H. 496, 48 A. 1088 (1901), and *Hill v. Hill,* 74 N.H. 288, 67 A. 406 (1907), involved agreements by the parties to live separately and to renounce all property rights arising from their marriage. No divorce or separation proceedings were ever instituted. *Wallace v. Wallace,* 74 N.H. 256, 67 A. 580 (1907), held that a petition to modify an alimony decree was not defeated by an agreement made prior to the decree. These cases are inapposite. In the present case the trial court could reasonably find that the agreement was executed in connection with a valid divorce. There is no allegation or evidence that it involved a fraud upon any court.

It is common practice in New Hampshire for the parties in a divorce proceeding to enter into stipulations, similar to the agreement in this case, regarding matters that arise from the divorce. *See, e.g., Pindar v. Pindar,* 109 N.H. 76, 242 A.2d 76 (1968); *Hamblett v. Lewis,* 114 N.H. 258, 319 A.2d 629 (1974). Such stipulations are entitled to consideration in the formulation of the decree, even though they are not binding on the court. *Madsen v. Madsen,* 109 N.H. 457, 255 A.2d 604 (1969). The agreement in this case, which was made in connection with a divorce proceeding, is not contrary to public policy merely because it settled "disputes which might otherwise [have made] the time and expense of the proceedings prohibitive." H. Clark, Jr., Domestic Relations § 16.4, at 526 (1968). "The fact is that with separation contracts the choice-of-law rules are not very rigid. So long as no public policy against the contract appears at the forum, and the contract seems to be a fair one, the effort will be to choose, from among the systems of law having a substantial connection with the contract, one which will permit a good faith effectuation of the parties' intent to have an effective contract." R. Leflar, American Conflicts Law § 238, at 573 (1968).

*Defendant's exceptions overruled.*

All concurred.