NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Strafford
No. 2016-0584


ESTATE OF THEODORE R. MORTNER & a.

v.

LINDSAY THOMPSON

Argued: May 16, 2017
Opinion Issued: March 7, 2018


Bianco Professional Association, of Concord (Jason B. Dennis on the brief and orally), for the plaintiffs.


Coughlin, Rainboth, Murphy & Lown, P.A., of Portsmouth (Timothy C. Coughlin on the memorandum of law and orally), for the defendant.


HICKS, J. This appeal arises in the wake of our decision in In the Matter of Mortner & Mortner, 168 N.H. 424, 429 (2015), in which we held that the death of Theodore Mortner (Husband) prior to issuance of a divorce decree abated the divorce action instituted by his then-wife, defendant Lindsay Thompson (Wife). We declined on preservation grounds in that case to address whether a property settlement agreement entered into by Husband and Wife during the divorce action's pendency survived the action's abatement as an independently enforceable contract. See Mortner, 168 N.H. at 429-30. Following our decision, the plaintiffs, Husband's estate (the "Estate") and his

daughter, Judith Mortner ("Judith"), filed this action against Wife, alleging breach of the property settlement agreement and unjust enrichment. The Estate and Judith now appeal an order of the Superior Court (Howard, J.) dismissing both claims. We affirm.

I

The pertinent factual and procedural background is set forth in our opinion in Mortner and need not be recapitulated here. See id. at 426-27. Subsequent to our decision in that case, the Estate and Judith instituted this action claiming that Wife remained contractually bound to the "Memorandum of Understanding" — a settlement agreement reached by Husband and Wife during the divorce action's pendency concerning division of the marital assets and debts. We shall refer to this agreement as the "property settlement agreement" for purposes of this appeal. The Estate and Judith also asserted an alternative claim against Wife for unjust enrichment, alleging that, as a result of Husband's death, Wife "wrongly secured" or unjustly retained certain assets that she had agreed to part with under the property settlement agreement.

Wife subsequently moved to dismiss the contract claim, arguing that the property settlement agreement's enforceability was contingent upon the issuance of a divorce decree and, because one never issued, the agreement was unenforceable. At a hearing held on her motion, Wife also orally moved to dismiss the unjust enrichment claim, contending that the Estate and Judith had alleged insufficient facts to establish that she had received anything of value from Husband or Judith, or that it would be unconscionable for Wife to retain the disputed assets. The Estate and Judith objected.

Following the hearing, the trial court issued an order agreeing with Wife on both fronts. With regard to the contract claim, the trial court found that the plain language of the property settlement agreement, read in light of the agreement's purpose and the context in which it was negotiated, demonstrated that a divorce decree was an "implied condition precedent" to its contractual enforceability. As to the unjust enrichment claim, the trial court concluded that the facts set forth in the Estate's and Judith's complaint were insufficient to allege that Wife engaged in any wrongdoing, or that her retention of the disputed assets rose to "the requisite level of indecency necessary to establish unconscionability." The Estate and Judith filed a motion for reconsideration and partial clarification, which was denied. This appeal followed.

II

The Estate and Judith first challenge the trial court's dismissal of their contract claim against Wife, contending that the property settlement agreement does not contain any of the signal words generally recognized to create

2

conditions precedent in a contractual agreement.  See Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust, 137 N.H. 393, 396 (1993).  Thus, according to the Estate and Judith, the trial court should have concluded that Husband and Wife intended the agreement to be an enforceable contract upon execution, not upon issuance of a divorce decree.

An essential premise of the Estate's and Judith's claim, however, is that in this State, as in some other jurisdictions, a property settlement agreement between parties in a divorce proceeding constitutes an independently enforceable contract.  See generally Annotation, Separation Agreements: Enforceability of Provision Affecting Property Rights upon Death of One Party Prior to Final Judgment of Divorce, 67 A.L.R.4th 237 (1989).  This premise is incorrect.  It has long been common practice in New Hampshire for parties in a divorce proceeding to reach a stipulated agreement, like Husband's and Wife's property settlement agreement, regarding matters arising out of dissolution of the marital relationship.  See, e.g., Miller v. Miller, 133 N.H. 587, 590 (1990); Narins v. Narins, 116 N.H. 200, 202 (1976); Pindar v. Pindar, 109 N.H. 76, 76 (1968).  And we have long held that such agreements are binding upon the parties.  See Bossi v. Bossi, 131 N.H. 262, 265 (1988); Leighton v. Leighton, 122 N.H. 721, 723 (1982).  Yet, it must be recognized that, although parties in a divorce proceeding are free to negotiate and bind themselves to such an agreement, the agreement itself is not self-executing in this State, but rather becomes enforceable only through the action of the court.  Compare Bossi, 131 N.H. at 265 (explaining that a master in a divorce proceeding has the discretion "to accept or reject a settlement agreement based on its terms") with Estate of Ladd v. Estate of Ladd, 640 A.2d 29, 32 (Vt. 1994) ("[A] pretrial agreement [between spouses] to distribute property is a contract, which the court can set aside only for grounds sufficient to set aside a contract." (quotation omitted)), overruled by Pouech v. Pouech, 904 A.2d 70, 77 (Vt. 2006), and Surabian v. Surabian, 285 N.E.2d 909, 911 (Mass. 1972) ("Because the separation agreement [between husband and wife] exists independently of the divorce decree, the [wife] could seek to have the support provision enforced in a contract action.").

"Notwithstanding any law to the contrary," the family division has exclusive jurisdiction over divorce matters.  RSA 490-D:2 (Supp. 2017); see Maldini v. Maldini, 168 N.H. 191, 195 (2015).  Because "the need to render equitable orders is inherent in the resolution of divorce matters," In the Matter of Muller & Muller, 164 N.H. 512, 518 (2013), the legislature has afforded the family division the powers of a court of equity in exercising this jurisdiction, see RSA 490-D:3 (2010).  The family division's equitable powers in a divorce proceeding include the full authority to divide the parties' marital property, Maldini, 168 N.H. at 195, in a manner it deems "'just' based upon the evidence presented and the equities of the case," In the Matter of Kempton & Kempton, 167 N.H. 785, 799 (2015); see RSA 458:16-a, II (2004) (creating presumption that an equal division of marital property is "equitable").  We afford the family

3

division broad discretion in determining matters of property distribution in fashioning the final divorce decree.  Kempton, 167 N.H. at 799.

The parties cannot deprive the family division of this authority — or of its authority to determine the disposition of other matters involved in a divorce proceeding — by purporting to settle the matter on their own terms.  Compare Poland v. Twomey, 156 N.H. 412, 414-15 (2007) ("Generally, parties are free to settle a case on any terms they desire and that are allowed by law.") with Campanello v. Mason, 571 P.2d 449, 453 (Okla. 1977) (holding that a property settlement agreement between divorcing spouses "is not a settlement as that term is generally used, for such agreements are not binding unless approved and incorporated into the trial court's decree").  It has long been true in this State that agreements between parties in a divorce proceeding, although binding upon them, are not binding upon the trial court, see Bossi, 131 N.H. at 265; Mortner, 168 N.H. at 429; Miller, 133 N.H. at 590; Narins, 116 N.H. at 202; Madsen v. Madsen, 109 N.H. 457, 459 (1969); see also In re Marriage of Rettke, 696 N.W.2d 846, 850 (Minn. Ct. App. 2005) (recognizing, in a divorce proceeding, "a [trial] court has a duty to protect the interests of both parties and all the citizens of the state to ensure that the stipulation is fair and reasonable to all" (quotation omitted)).

Nor may the parties defeat the power expressly conferred on the family division by the legislature with regard to property division by reaching their own private agreement and enforcing it through a contract action in superior court.  Maldini, 168 N.H. at 196 (holding that superior court lacked jurisdiction over a "side agreement" reached by spouses during divorce proceedings because it concerned marital property, "over which the family division has exclusive jurisdiction"); see In the Matter of Sculley & Sculley, 153 N.H. 178, 181 (2006) ("Where exclusive jurisdiction is expressly conferred upon a court, no other tribunal may exercise such jurisdiction." (quotation omitted)).

Nevertheless, as alluded to above, the parties are entitled to enter into a stipulated agreement, like the one in this case, setting forth a recommended property settlement and submit it to the family division for its consideration.  But that is all such an agreement amounts to in this state — a recommendation.  Cf. Bliwas v. Bliwas, 178 N.W.2d 35, 37 (Wis. 1970); 27C C.J.S. Divorce § 985, at 67 (2016); see also Norris and Norris, 727 P.2d 115, 116 (Or. 1986) ("A property settlement agreement is offered by the parties as a suggested shorthand for the trial court's obligation to achieve a distribution of property between the parties that is just and equitable in the circumstances.").  After consideration, the family division is free to entirely reject the provisions set forth in the parties' recommendation.  Mortner, 168 N.H. at 429.  If the family division instead approves the recommended provisions in whole or in part and incorporates them into a final divorce decree, those provisions become enforceable.  See Miller, 133 N.H. at 590.  "But it is the court's action, and not the action of the parties which makes the provisions [enforceable]."

Campanello, 571 P.2d at 453; see also Bailey v. Mann, 895 N.E.2d 1215, 1217 (Ind. 2008) ("Settlement agreements become binding contracts when incorporated into the dissolution decree and are interpreted according to the general rules for contract construction.").

The instant property settlement agreement requests that the family division approve what Husband and Wife believed to embody a "fair and reasonable" property division between them. Such an agreement "amounting to no more than an understanding of what the parties desire and recommend to the court does not rise to the dignity of a contract," Vaccaro v. Vaccaro, 227 N.W.2d 62, 66 (Wis. 1975) (quotation omitted), let alone one enforceable in a superior court action, Maldini, 168 N.H. at 196. Because the property settlement agreement between Husband and Wife was not a contract, the Estate's and Judith's contract claim thereunder necessarily fails. Accordingly, we conclude that the trial court did not err in dismissing this claim. See Suojanen v. Tardif, 121 N.H. 1036, 1039 (1981) (a wrong reason given by a trial court does not invalidate a correct ruling).

III

The Estate and Judith next challenge the trial court's conclusion that the factual allegations in the complaint fail to state a claim for unjust enrichment.

In reviewing a trial court's grant of a motion to dismiss, our task is to determine whether the allegations in the complaint are reasonably susceptible of a construction that would permit recovery. See Coan v. N.H. Dep't of Env't Servs., 161 N.H. 1, 4 (2010). We assume all facts pleaded in the complaint to be true and construe all reasonable inferences drawn from those facts in the plaintiff's favor. See id. We need not, however, assume the truth of statements in the pleadings that are merely conclusions of law. Lamb v. Shaker Reg'l Sch. Dist., 168 N.H. 47, 49 (2015). We engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. See Coan, 161 N.H. at 4-5.

"The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity." Pella Windows and Doors v. Faraci, 133 N.H. 585, 586 (1990) (quotation omitted). To state a claim, a plaintiff must sufficiently allege that the defendant was enriched at the plaintiff's expense through either: (1) wrongful acts; or (2) "passive acceptance of a benefit that would be unconscionable to retain." Kowalski v. Cedars of Portsmouth Condo. Assoc., 146 N.H. 130, 133 (2001).

In the complaint, the Estate and Judith allege that, as a result of Husband's death during the divorce proceedings, Wife "wrongly secured" or unjustly retained certain assets she had agreed to give Husband under the

5

property settlement agreement — namely, a $250,000 payment, and a 45 percent share of her individual interest in a limited partnership agreement. We note that the Estate and Judith have clarified in this appeal that they are pursuing this claim solely under the theory that Wife passively accepted a benefit that would be unconscionable to retain.

Where, as in the present case, no enforceable contract exists between the parties, "a trial court may require an individual to make restitution for unjust enrichment if he has received a benefit that would be unconscionable to retain." Pella Windows and Doors, Inc., 133 N.H. at 586 (quotation and brackets omitted). A defendant's retention of a benefit is "unconscionable" when it "affronts the sense of justice, decency, or reasonableness" or is "[s]hockingly unjust or unfair." Black's Law Dictionary 1757 (10th ed. 2014) (defining unconscionable). Thus, the question for us becomes whether pleading that, as a result of one spouse's death during divorce proceedings, the surviving spouse retained assets he or she had agreed to part with under a property settlement agreement sufficiently alleges a shockingly unjust or unfair outcome, or one affronting the sense of justice. We conclude it does not.

As Wife asserts, the complaint fails to allege a benefit Husband or Judith conferred upon her that it would be unconscionable for her to retain. We decline to construe, as the Estate and Judith seem to invite us to, Husband's death as providing Wife with such a benefit, regardless of whether it had the legal effect she was ultimately seeking in the divorce — i.e., termination of the parties' marriage. Rather, the complaint merely alleges that, as result of Husband's death, Wife retained the entirety of her individual interest in a limited partnership agreement and what appears to be a sum of her own money. We agree with the trial court that these factual allegations fall short of the unconscionable outcome required to maintain an action for unjust enrichment.

Accordingly, the trial court's dismissal of the Estate's and Judith's unjust enrichment claim is also affirmed.

Affirmed.

DALIANIS, C.J., and LYNN and BASSETT, JJ., concurred.

6